803 F.2d 563
 Charlotte Louise WILSON, individually, as Personal
Representative of the Estate of Darold Floyd
Wilson, and as Guardian of Jolene Kay
Wilson, Craig Allen Wilson and
Jerry Todd Wilson; Plaintiff,
Gail L. Clay, individually, as Personal Representative of
the Estate of Norman Lee Clay, and as Guardian of
Karri Lynn Clay and Boyd Lee Clay,
Plaintiff- Appellant,
v.
BURLINGTON NORTHERN RAILROAD COMPANY, a corporation,
Defendant-Appellee.
 No. 84-1536.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 10, 1986.
 
 Gregory R. Piche of Spurgeon, Haney & Howbert, P.C., Colorado Springs, Colo., for plaintiff-appellant.
 Albert J. Givray of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl. (C. William Kraft, III, John L. Pilon and James P. Gatlin, on the brief, Denver, Colo.), for defendant-appellee.
 Before McKAY, SETH and TIMBERS,* Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 Plaintiff-appellant, Gail Clay, appeals the denial by the district court of her motion for prejudgment interest in an action for wrongful death brought under the Federal Employer's Liability Act, 45 U.S.C. Secs. 51-60. The trial court denied Mrs. Clay's motion noting appellant's failure to cite any persuasive authority supporting such an award. We agree.
 
 
 2
 The facts giving rise to this action are as follows. Appellant's husband, Norman Clay, who was a brakeman on the Burlington Northern Railroad, was killed on July 3, 1981 in a train accident caused by a bridge washout. Appellant brought this wrongful death action in the United States District Court for the District of Colorado under 45 U.S.C. Sec. 51. On November 14, 1983 the trial court entered an amended judgment pursuant to a jury verdict in favor of appellant in the amount of $690,000. Pending a retrial of a co-plaintiff's action which was also ordered by the court, Mrs. Clay moved for an award of prejudgment interest. After denying appellant's motion, the district court certified the judgment for appeal to this court. The only issue presented by appellant is whether prejudgment interest may be awarded in actions arising under the Federal Employer's Liability Act, 45 U.S.C. Sec. 51.
 
 
 3
 It seems that although this question is a novel one for this court and the United States Supreme Court has yet to consider it, this same issue has been considered in other circuits. The result of our review of those previous cases, ever since the FELA was enacted almost 80 years ago, indicates a unanimous conclusion that Congress did not intend to provide prejudgment interest under the FELA. See e.g., Lindsey v. Louisville & Nashville Railroad Co., 775 F.2d 1322 (5th Cir.); Kozar v. Chesapeake and Ohio Railway Co., 449 F.2d 1238 (6th Cir.); Powers v. New York Central Railroad Co., 251 F.2d 813 (2d Cir.); Chicago, Milwaukee, St. Paul and P. Ry. Co. v. Busby, 41 F.2d 617 (9th Cir.).
 
 
 4
 Reference to the statute itself in order to resolve this issue is of limited assistance. The FELA is silent on the issue of prejudgment interest or any type of interest. The only federal statutory provision on the recoverability of interest in general is 28 U.S.C. Sec. 1961 which "relates only to interest recoverable on a judgment itself. It has nothing to do with the question of whether prejudgment interest shall be allowed as part of the compensation awarded to make the injured party whole." Louisiana & Arkansas Railway Co. v. Export Drum Co., 359 F.2d 311, 317 (5th Cir.) (emphasis in original). In Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3, the Supreme Court directed consideration in such instances to the federal statute controlling the action and the underlying congressional purpose. 332 U.S. at 373-74, 68 S.Ct. at 6, 7.
 
 
 5
 Both parties agree that at the time of its enactment in 1908 the FELA was a radical departure from the common law duties owed an employee by his employer. By eliminating many common law defenses any one of which could defeat an injured employee's action, Congress insured that workers would be compensated for injuries resulting from railroad negligence. And, as appellant points out, these sweeping departures from the established common law are evidence of a "general congressional intent ... to provide liberal recovery for injured workers...." Kernan v. American Dredging Co., 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 282. However, it is another matter to imply from certain of Congress' express departures from the common law in 1908 a legislative intention that then equally radical departures be later made by judicial fiat.
 
 
 6
 In light of the observation earlier that the FELA represented a radical departure from the common law in a number of different respects it is useful to recall that at the time the common law most uniformly rejected the imposition of prejudgment interest. See Burrows v. Lownsdale, 133 F. 250 (9th Cir.); Missouri & Kansas Telephone Co. v. Vandervort, 71 Kan. 101, 79 P. 1068. This court finds some indication of legislative intent in Congress' failure to expressly abrogate that principle in passing the FELA when it did so to other well established doctrines. The omission by Congress in the FELA of such an express statement indicates to us that Congress did not intend to provide for prejudgment interest. Congress, in our view, reached a balance as to the many considerations before it on this then novel legislation and this we should not disturb.
 
 
 7
 Appellant contends that this failure to specifically address the matter when combined with the already mentioned overall intention of the FELA to provide liberal recovery to injured workers is evidence of an intention by Congress to allow federal courts to implement such remedies as necessary. In support of appellant's petition to now implement in FELA cases the additional remedy of prejudgment interest she cites the "dramatic and extraordinary" change regarding the importance of interest in our modern society. Additionally, appellant contends that the imposition of prejudgment interest would greatly reduce trial delays thereby improving court efficiency and, finally, that the application of interest to the judgment from the date of injury would more accurately compensate injured workers for their loss.
 
 
 8
 This court does not intend to unduly discount the obviously significant impact which interest and other determinants of the time value of money have on our modern economy. However, we are not in a position to assess the degree to which the heightened importance of interest has been either "dramatic" or "extraordinary." As mentioned earlier in this opinion the notion of interest and the time value of money was not an alien concept to Congress in 1908. We cannot assume an intention on the part of Congress that the federal judiciary should implement the additional remedy of prejudgment interest when the courts subjectively determine that the prime rate has attained a "dramatic" or "extraordinary" level. Further, in the context of the FELA where Congress has crafted a then unique scheme of compensation separate from the common law we are hesitant to impose another remedy against the employers which may alter the nature of the congressionally determined employer-employee relationship. Accordingly, it seems that the awarding of prejudgment interest under the FELA by federal courts pursuant to their "equitable powers" is an inappropriate method of imposing a remedy not granted by Congress. The Jones Act is not of help on this point.
 
 
 9
 In addition to being susceptible to the same criticism as above, appellant's additional contentions of reducing trial delays and more accurately compensating plaintiffs for their injuries present infirmities of their own. The increasing length of trial delays is a regrettable reality and may be a sign of the times much as is the influence of interest rates. However, although no doubt the delays are to some extent the fault of the specific parties to an action, it is impossible to attribute the entire blame for such delays upon the defendant. Moreover, the length of trial delays seems as closely related to the size of the burgeoning civil docket in federal court. Even assuming that allowing prejudgment interest would effectively reduce the length of trial delays we don't think it is a sufficient reason to here reach a different conclusion.
 
 
 10
 Appellant's contention that prejudgment interest would more accurately compensate injured workers by recognizing the worker's deprivation during the period from injury to judgment itself presents another reason counseling hesitation in this matter. Obviously the damages awarded to a successful plaintiff represent a composite of a number of different elements. Not all of these elements are properly to be considered for prejudgment interest and whether any one of these various components should be included and how they are to be separated is more properly a consideration for Congress.
 
 
 11
 Indeed, appellant has presented numerous reasons in support of her petition for prejudgment interest, arguments which the court feels may be more effective when directed at another branch of the federal government. Congress itself may be persuaded to change its initial determination on prejudgment interest. However, this court is not sufficiently enamored with the arguments proffered by appellant to lead us to depart from nearly 80 years of precedent consistently interpreting the FELA as not permitting prejudgment interest. Although looking to congressional action or inaction in the face of subsequent developments in society and the common law is usually ambiguous assistance at best, in this instance there seem to be no indications that Congress has swayed from its initial determination to not permit prejudgment interest in FELA cases.
 
 
 12
 Accordingly, the order of the district court denying appellant's motion for prejudgment interest is AFFIRMED.
 
 McKAY, Circuit Judge, concurring:
 
 13
 The legislative mandate in these FELA cases is simple--fully compensate the injured employee for her losses. As any novice finance student knows, no loss is more fundamental or easily understood than the loss of the use of money over time. The ominous burden of interest on the National debt and the enormous collective profitability of our myriad financial institutions are glaring reminders of that simple, economic fact. Congress itself recognized in 1984 the potentially immense value of money over time when it prohibited premature, undiscounted tax deductions for future liabilities, thereby increasing revenues by an expected $209 million. Prior tax accounting rules "[had] not been grounded in economic reality...." Jensen, The Deduction of Future Liabilities by Accrual-Basis Taxpayers: Premature Accruals, the All Events Test and Economic Performance, 37 U.Fla.L.Rev. 443, 448 (1985).[1]
 
 
 14
 The interest foregone on lost income or on money spent for out-of-pocket expenses from the date of loss to the time of compensation is as much a part of making an injured party whole as is the calculation of her wage rate. Nothing in the statutory scheme or in the history of its enforcement suggests an adequate reason why the courts should not, however tardily, carry out this part of the legislative mandate to make injured plaintiffs whole. Even the majority concedes that the FELA constituted a "radical" and "sweeping" departure from prior law, greatly liberalizing the injured employee's ability to recover. The courts have long recognized the general principle in a manner biased in favor of defendants by requiring that awards for future losses be discounted to present value. St. Louis Southwestern Railway Co. v. Dickerson, 470 U.S. 409, 411-12 105 S.Ct. 1347, 1348-49, 84 L.Ed.2d 203 (1985). Over and above sound, simple calculation of true economic recompense, equity demands that this disparity be corrected.
 
 
 15
 The majority misperceives the judicial function when it concludes that, without evidence of legislative intent, it is improper to award prejudgment interest "by judicial fiat." The majority would concededly find an award of prejudgment interest under FELA appropriate if, but only if, it could glean that the legislature intended such an award; if the statute is silent and Congress fails to intervene, the court may not act. But as the court itself notes, "looking to congressional action or inaction in the face of subsequent developments in society and the common law is usually ambiguous assistance at best." More to the point, however, the judiciary's hands are not tied, and should not be tied, when Congress fails to explicitly delineate its "intent" with respect to an issue such as prejudgment interest. "[A]ny principle that effectively removes judicial ability to make rules because of a preference for legislative rulemaking does not leave us with a workable system." Field, Sources of Law: The Scope of Federal Common Law, 99 Harv.L.Rev. 881, 934 (1986).
 
 
 16
 Moreover, in most instances, such fine, interpretational distinctions are illusory, since Congress most likely never contemplated the particular issue under consideration. In such cases, "interpretation shades into judicial lawmaking on a spectrum, as specific evidence of legislative advertence to the issue at hand attenuates." Id. at 894 (quoting P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System, 770 (2d ed. 1973)). When the court nevertheless insists on resting its decision in the rubric of "statutory interpretation" and "congressional intent," the decision thwarts the open, analytical dialogue which should ensue from frank analysis of the issue's substantive merits. As one commentator argues, "Rather than always being bound by the positive commands of a statute's words or professing adherence to undefinable concepts of legislative intent or purpose, courts [should] explicitly reason from and develop statutory principles in the tentative, incremental fashion of the common law." Note, Intent, Clear Statements, and the Common Law: Statutory Interpretation in the Supreme Court, 95 Harv.L.Rev. 892, 913 (1982) (footnotes omitted). It is when a court rigorously engages in thoughtful analysis in the face of legislative silence, rather than surmise chimerical legislative "intent," that it best fulfills its deliberative function and best serves to further the evolution of the law.
 
 
 17
 Even an application of the majority's "legislative intent" should lead to the result I urge. Congress intended full economic recompense. Like all damage awards, Congress has willfully left that determination to the particular case based on the evidence even where some element (such as present value of future awards) lends itself to a broad rule that does not require reestablishment in each case--only specific application. It is, therefore, not "legislating" or a misapplication of function for courts to do what they have always done--unless expressly forbidden by legislation--shape damage awards from sound principles and specific evidence.
 
 
 18
 I concur rather than dissent solely because the plaintiff, while creative in attacking such a long-entrenched error, has failed properly to present evidence to support a sound award of this aspect of her real economic loss. First, the required calculations are more sophisticated than mere application of current interest rates to the entire award from the date of injury to the date of compensation. Plaintiff should have presented testimony of her actual economic loss as well as expert economic testimony with respect to the appropriate interest calculation under, for example, Future Value Annuity Tables. These tables reveal the value of consecutive deposits of $1 at regular intervals using various interst rates, reflecting the total's growing amount over diminishing time. In essence, the calculation is the inverse of the process of reducing future damages to present value, and the expert testimony required is analogous.
 
 
 19
 Second, I take the view that in all cases an award of prejudgment interest would require the segregation of economic losses from pain and suffering and punitive damages where these awards are recoverable. Neither of the latter two measures represent, strictly speaking, an economic loss to the plaintiff, and thus an award of foregone interest on these amounts would be inappropriate. Pain and suffering is a sentimental award which has been engrafted onto awards for economic loss through common-law evolution. The jury or court award of this amount is merely the reduction of that sentimental value to dollars at the time of judgment and does not in any real or analytical sense represent the return of the loss of the use of money. The same is true of punitive damages which perform a penal function and have no element in them of the return of deprived market value.
 
 
 20
 In all properly presented cases, so long as not expressly forbidden by clear, legislative mandate or private agreement, I would always award prejudgment interest on the amount of proven economic losses incurred prior to the date of judgment. Since we are here faced with a general verdict not properly segregated into its component parts, that task is now impossible. Plaintiff failed to timely present the matter based on sound testimony and proper instructions or interrogatories and must bear the burden of that failure. I would therefore affirm, but not for the reasons given by the court.
 
 
 
 *
 Honorable William H. Timbers, United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 For an exhaustive list of recent authority discussing the potential abuses that can arise when the time value of money is not considered, see id. at 445 n. 11