**Charlotte Louise WILSON, individually, as Personal Representative of the Estate of Darold Floyd Wilson, and as Guardian of Jolene Kay Wilson, Craig Allen Wilson and Jerry Todd Wilson, Plaintiff-Appellee, Cross-Appellant,**

**Gail L. Clay, individually, as Personal Representative of the Estate of Norman Lee Clay, and as Guardian of Karri Lynn Clay and Boyd Lee Clay, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, Defendant-Appellant, Cross-Appellee.**

Nos. 85–1381, 85–1400.

United States Court of Appeals, Tenth Circuit.

Nov. 10, 1986.

Rehearing Denied Dec. 22, 1986.

---

C. William Kraft, III (John L. Pilon and James P. Gatlin, with him on brief), Denver, Colo., for defendant-appellant, cross-appellee.

Gregory V. Piché of Spurgeon, Haney & Howbert, Professional Corp., Colorado Springs, Colo., for plaintiff-appellee, cross-appellant.

Before McKAY, SETH and TIMBERS,* Circuit Judges.

SETH, Circuit Judge.

These are appeals from a judgment for plaintiff-appellee, Charlotte Louise Wilson, in the retrial of a wrongful death case brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. Defendant-appellant, Burlington Northern Railroad Company, contends that the district court judge erred in ordering the issues of causation and of the quantum of plaintiff's decedent's contributory negligence retried because he found the testimony of a witness implausible. In addition, the Railroad claims that the trial judge erred in not instructing the jury on the act of God defense and on intervening cause, in not recusing himself from the second trial and in admitting in the second trial the very testimony that he had found to have tainted the first trial. Mrs. Wilson cross-appeals arguing that the trial court erred in holding that it lacked jurisdiction to entertain a motion to alter the judgment to include prejudgment interest from the date of the accident because the motion was untimely.

We hold that the trial court should not have granted a new trial on the issues of causation and contributory negligence. Accordingly, we need not address appellant's remaining contentions. We find that the trial court was correct in denying Mrs. Wilson's motion for prejudgment interest since prejudgment interest may not be awarded under FELA. *Clay v. Burlington Northern Railroad Co.*, 803 F.2d 563 (10th Cir.).

The relevant facts are as follows. Appellee's husband, Darold Floyd Wilson, was a locomotive engineer for the Burlington Northern Railroad. On July 3, 1981, Mr. Wilson drowned after the engine he was operating fell into the Frijole Creek near Trinidad, Colorado where a bridge had been washed out. Mrs. Wilson brought a wrongful death action against Burlington under the FELA in the United States District Court for the District of Colorado.

At the close of the first trial the jury completed a special verdict form. It found that the Railroad was negligent in failing to warn Mr. Wilson of potential flood dangers and in failing to advise him of reported high water or that a track inspection had been ordered. The jury also concluded that the Railroad was negligent in dispatching the train without cautionary orders and without first inspecting the track and bridges along the way after it received notice of rain and high water conditions.

---

* Honorable William H. Timbers, United States Circuit Judge for the Second Circuit, sitting by designation.

Of significance on this appeal the jury specifically decided that the Railroad was not negligent in its inspection and maintenance of the bridge which had washed out.

The jury in the first trial found Mr. Wilson guilty of contributory negligence because he failed to slow his train down when he encountered a severe rainstorm with limited visibility as the Railroad's Consolidated Code of Operating Rules required. The jury so decided that the decedent was 75% contributorily negligent and thus reduced Mrs. Wilson's damages by 75%.

The trial court granted Mrs. Wilson a new trial on the issues of causation and contributory negligence because it was of the opinion that one of the plaintiff's witnesses, Joseph Cuccia, a Maintenance and Inspection Supervisor for the Railroad, had perjured himself. The court expressed its view that Mr. Cuccia's testimony was critical in the case on the issue of the Railroad's negligence. The court concluded that without this allegedly false testimony the jury would have found, contrary to what it did, that the Railroad's inspection and maintenance of the bridge were negligent and thus would have apportioned negligence differently between the Railroad and the decedent.

After a new trial was granted, the Railroad moved to disqualify the trial judge for bias. The court denied the motion. During the second trial after Mr. Cuccia refused to testify, the trial judge admitted part of Mr. Cuccia's prior testimony into evidence. These portions were apparently selected by plaintiff's counsel. The second jury found that the Railroad was negligent in failing to properly design, construct, inspect and/or maintain the bridge. It also determined that the decedent was 10% contributorily negligent.

The FELA, of course, represented a departure from the common-law duty of the master to the servant. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493. In the FELA Congress replaced the common-law duty owed by railroads to their employees with the duty to pay damages to employees or their personal representatives for injury or death due "in whole or in part" to employer negligence. 45 U.S.C. § 51. Under the FELA an employee's contributory negligence will not bar his recovery. 45 U.S.C. § 53. However, an employee's damages "shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," 45 U.S.C. § 53 (with some exceptions not here applicable). Thus, FELA cases generally center on the issue of whether an employer's negligence played any part in the injury or death which is the subject of the suit. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493.

Congress contemplated that the question of whether employer fault played any part in the employee's injury or death would be decided by the jury. 352 U.S. at 508–09, 77 S.Ct. at 449–50. The 1939 amendments to the original Act were designed to close the loopholes by which employees were denied jury determinations. 352 U.S. at 508–09, 77 S.Ct. at 449–50. In *Ellis v. Union Pacific Railroad Co.*, 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572, the Supreme Court recognized that

> "[t]he choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury."

A case that turns on the credibility of witnesses is "peculiarly one for the jury." 329 U.S. at 653, 67 S.Ct. at 600.

At the first trial of the instant case the credibility of the witness Cuccia was sharply at issue. The jury was faced with the task of deciding whether the Railroad's inspection and maintenance of the bridge had anything to do with the accident. The plaintiff's theory was that the Railroad's negligent inspection and maintenance caused the bridge failure. The plaintiff maintained that the Railroad permitted the anchor bolts which attached the bridge to concrete abutments on either side of the creek to rust and that due to the rust the bolts gave way under the water pressure.

In support of this theory plaintiff called Mr. Cuccia, the Railroad's local Maintenance and Inspection Supervisor, as a witness to testify as to the number of and times of bridge inspections he had carried out.

During the first trial plaintiff's counsel attempted to discredit Mr. Cuccia's testimony to create the inference that Mr. Cuccia had been negligent in inspecting and maintaining the bridge. Plaintiff's counsel asked Mr. Cuccia if he had falsified his inspection book. He questioned the number of bridges Mr. Cuccia claimed to have inspected on certain dates and the thoroughness of his inspections. Counsel reminded Mr. Cuccia that he was under oath and subject to a penalty for perjury if he lied. In his closing argument to the jury, plaintiff's counsel attacked Mr. Cuccia's credibility.

The trial court instructed the jury members that they were

"the sole judges of the credibility, that is, the believability, of the witnesses, and the weight to be given to their testimony.... If you believe that any witness has willfully testified falsely to any material fact, you may disregard all or any part of that witness' testimony."

Having heard plaintiff's counsel's attempts to call Mr. Cuccia's testimony into question through such adversarial devices as vigorous cross-examination and closing argument and being cognizant of its prerogative to evaluate the credibility of witnesses through the court's instruction, the first jury, as mentioned, determined that the Railroad was not negligent in its inspection and maintenance of the bridge and found Mr. Wilson 75% contributorily negligent.

In granting the plaintiff's motion for a new trial on the issues of causation and contributory negligence for the sole reason that it disbelieved Mr. Cuccia's testimony, the trial court arrogated the jury's function of assessing credibility to itself. The Supreme Court repeatedly has cautioned trial courts not to substitute their judgment for that of the jury in FELA cases. *See, e.g.,*

*Davis v. Baltimore & Ohio Railroad Co.,* 379 U.S. 671, 672, 85 S.Ct. 636, 637, 13 L.Ed.2d 594 (per curiam); *Basham v. Pennsylvania Railroad Co.,* 372 U.S. 699, 700–01, 83 S.Ct. 965, 966–67, 10 L.Ed.2d 80 (per curiam). In *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 the Court held that "where ... there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." Courts are not at liberty to override jury verdicts "merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & Pekin Union Railway Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520. A jury verdict may be upset "[o]nly when there is a complete absence of probative facts to support the conclusion reached." *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916. Accordingly, in evaluating whether the trial court erred in granting a new trial, we must determine whether there is a reasonable basis in the record to support the jury's findings.

No matter how the first jury assessed Mr. Cuccia's credibility, there was ample evidence in the record to support the jury's verdict that the Railroad was not negligent in its inspection and maintenance and that Mr. Wilson was 75% negligent. The jury could have believed Mr. Cuccia's testimony as to the number and frequency of his inspections and declined to draw the inferences that Mr. Cuccia's inspections were inadequate and that the Railroad was therefore negligent in the inspection and maintenance of the bridge. The jury could have concluded that Mr. Cuccia lied about the total number and frequency of his inspections of all the bridges listed yet conducted adequate inspection and maintenance of the bridge in issue. The fact that Mr. Cuccia resided relatively near to the bridge may have created the inference that it was more likely than not that Mr. Cuccia would inspect a bridge that near to his home, and the entry in Mr. Cuccia's inspec-

tion book indicating that this bridge needed paint is detailed enough to give rise to an inference that he did inspect that particular bridge.

Even if the jury utterly disregarded Mr. Cuccia's testimony, there was a rational basis in the evidence to support the jury's verdict. A crew member of a northbound train which crossed the bridge approximately one hour before the southbound train operated by Mr. Wilson approached had observed nothing out of the ordinary in the bridge's vicinity except for the presence of puddles on a road paralleling the railroad track south of the bridge. This evidence suggests that the large amount of water encountered by Mr. Wilson's train at the bridge was due to a flash flood. Additional testimony revealed that the flood that washed out the bridge prior to the approach of Mr. Wilson's train was of an unparalleled scope, a 100–year or 500–year flood. The testimony of a rear crewman on Mr. Wilson's train that immediately after the accident he saw water at the height of the bridge's abutments which was continuing to rise buttresses the other testimony as to the magnitude of the flood. Moreover, the Railroad's structural engineering expert testified that the bridge's failure was a consequence of the great water pressure on the side of the bridge's girders which even a bridge with new bolts would not have been able to withstand.

Finally, testimony that Mr. Wilson failed to comply with a Railroad rule which required him to slow his train when he had an indication of high water, to stop to ascertain the storm's extent and to examine bridges supports the finding that Mr. Wilson himself was negligent to a large degree. In sum, the original jury had a reasonable evidentiary basis for concluding that the Railroad's inspection and maintenance of the bridge had nothing to do with the accident.

For the foregoing reasons, we reverse the order of the district court granting plaintiff's motion for a new trial and remand with directions that the first jury's verdict be reinstated.

The district court's order denying Mrs. Wilson's motion for prejudgment interest is affirmed for the reasons articulated in *Clay v. Burlington Northern Railroad Co.*, 803 F.2d 563 (10th Cir.1986).

IT IS SO ORDERED.

McKAY, Circuit Judge, concurring:

With respect to the court's denial of prejudgment interest, I concur, rather than dissent, for the reasons set forth in my concurring opinion in *Clay v. Burlington Northern Railroad Co.*, 803 F.2d 563 (10th Cir.1986). The judgment of $1,000,192.00 was not segregated into its component parts of economic loss, for which I would award prejudgment interest, and noneconomic compensation, such as pain and suffering, for which I would not. In addition, the plaintiff failed to submit evidence to support the calculation of an appropriate interest rate.