Fred KEELING, Plaintiff,

v.

Greg SCHAEFER, et al., Defendants.

No. CIV.A.97–3352–MLB.

United States District Court,
D. Kansas.

March 14, 2001.

Fred L. Keeling, Lansing, KS, pro se.

W. Terrence Kilroy, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Greg Shaffer and Joe Menghini.

James W. Coder, Office of Attorney General, Topeka, KS, for Charles E. Simmons, David R. McKune and Sheryl N. Saywer.

### MEMORANDUM AND ORDER

BELOT, District Judge.

### I. INTRODUCTION

Plaintiff Fred Keeling, an inmate in the Lansing Correctional Facility, filed this action, pursuant to 42 U.S.C. section 1983, alleging his Eighth Amendment and Due Process rights were violated. Doc. 1. Plaintiff named Greg Schaefer,[1] Joseph Menghini, Charles Simmons, David McKune, and Sheryl Sawyer as defendants.[2] This matter is presently before the court upon defendants' motions for summary judgment. Docs. 20 and 22.[3]

---

1. Schaefer's name has also been spelled "Shaffer" in some pleadings. Docs. 1, 20, 21, and 31. Based upon the pleadings Schaefer's attorney has filed with this court, it appears the proper spelling is "Schaefer." Accordingly, he will be referred to by this spelling.

2. For purposes of organization, Schaefer and Menghini will be collectively referred to as the "Impact defendants" and Simmons, McKune, and Sawyer will be identified as the "state defendants."

3. Specifically, the state defendants moved for summary judgment and have filed a memo-

For the reasons set forth below, the motions are granted in part and denied in part.

## A. Facts [4]

### 1. The Events

■ On February 3, 1997, plaintiff was working at Impact Design, Incorporated (Impact), a private, for-profit Kansas corporation operating within the confines of Lansing Correctional Facility (LCF). Plaintiff's job was to "inventory" spools of thread used in Impact's embroidery business and provide management with an accurate count of their stock. Plaintiff alleges he began the task in the early morning hours and expected the job would not be finished until the early evening hours. Sometime around 3:00 p.m., another inmate, Johnson, also an Impact employee, asked plaintiff for a spool of thread. When plaintiff attempted to hand the requested thread to Johnson, Johnson allegedly struck plaintiff in the face with an unknown metal object. While plaintiff describes himself as the victim of an unpro-voked attack, defendants aver the blame rested with, if not plaintiff solely, both inmates.

As a result of this altercation, plaintiff suffered severe damage that caused his blood to spill on the floor. Schaefer, a non-inmate employee, apparently saw several spools of thread strewn about the area where plaintiff was supposed to be working and later found plaintiff bleeding in the restroom near the location of the attack. Schaefer allegedly offered his assistance to plaintiff, was told there would be no further trouble between plaintiff and Johnson, and had his efforts to inform LCF authorities as to plaintiff's conditions rebuffed by plaintiff. *Martinez* Report, p. 3. Plaintiff does not deny these allegations but instead alleges Schaefer's decision did not comport with prison regulations. Doc. 24, p. 2. Schaefer claims he instructed plaintiff to wait on the Impact loading dock while Schaefer determined what to do next. Plaintiff contends Schaefer ordered him to return to his cell.

randum in support. Docs. 20 and 21. The Impact defendants have likewise moved for summary judgment. Doc. 22. Also before the court are (1) "Plaintiff's Argument Against Summary Judgment," (2) "Defendants' [Schaefer and Menghini] Reply to Plaintiff's Argument Against Summary Judgment," (3) "Plaintiff's Response to Defendants' Reply to Argument Against Summary Judgment," (4) "Supplemental Response to Defendant[s'] Motion for Summary Judgment," and (5) "Defendants' [Schaefer and Menghini] Reply to Plaintiff's Supplemental Response to Defendants' Motion for Summary Judgment." Docs. 24, 28, 31, 47, and 50.

4. All facts set forth are either uncontroverted, or, if controverted, taken in the light most favorable, along with all reasonable inferences, to plaintiff. *See Hall v. United Parcel Serv.*, No. Civ. A. 992467–CM, 2000 WL 1114841, at *5 (D.Kan. July 31, 2000) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). To the extent relevant, the factual disagreements between the parties will be noted.

Additionally, it must be noted that a Martinez report, pursuant to *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir.1978), has been filed in this matter. The Tenth Circuit has said this report "is not only proper, but may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir.1992). "The pro se prisoner's complaint, when sworn and made under penalty of perjury, is also treated as an affidavit and, like the *Martinez* report, serves as evidence for a summary judgment determination." *Spurlock v. Simmons*, 88 F.Supp.2d 1189, 1191 (D.Kan.2000).

In any event, plaintiff did reach his cell that evening. During that evening and throughout the night, he claims to have suffered through the evening with severe medical conditions, such as "grandma [sic] seizures,"[5] excruciating pain, and repeated losses of consciousness. When he awoke in the morning, he was greeted by another inmate/employee of Impact who, allegedly at the behest of Menghini, instructed plaintiff not to detail to anyone how he received his injuries and retrieved plaintiff's blood-soaked clothing to cover-up the incident. Plaintiff allegedly informed this inmate/employee he could not report to work that day due to his serious medical conditions. When the inmate/employee left plaintiff's cell, plaintiff literally stumbled out of his cell and collapsed before a prison guard. He was taken to a the prison medical station and then transferred to a local hospital where he underwent substantial corrective surgery to a great portion of his face.

The day following the attack, plaintiff was charged by prison officials with violating two prison regulations for fighting[6] and poor work performance.[7] "Due to plaintiff's injuries and one continuance by the state, an evidentiary hearing was not held until April 3, 1997." *Martinez* Report, p. 5. With regard to the fighting charge, plaintiff represented himself, did not request any witnesses, and was given an opportunity to cross examine the prison's witnesses. *Martinez* Report, p. 5. During his own testimony, plaintiff stated he was attacked and no fight occurred. Contrary to plaintiff's testimony, there was some evidence that plaintiff did admit to fighting with Johnson. Relying upon this alleged admission, the reporting officer's statement, and other statements in the disciplinary report, Sawyer, in her capacity as hearing officer, found plaintiff guilty of fighting and sentenced him to twenty-one days in disciplinary segregation. Plaintiff's appeal of his conviction to Simmons, the Secretary of Corrections, was denied.

With respect to the deficient work performance charge, prison officials asserted plaintiff "deliberately miscalculated a thread inventory which resulted in needed thread not being ordered, a loss of customer orders as a result thereof and thread not needed being ordered." *Martinez* Report, p. 6. Plaintiff was afforded the same procedural safeguards he enjoyed at the "fighting" hearing. At this hearing, Men-

---

5. The court assumes plaintiff is referring to grand mal seizures. The *Martinez* report denotes he suffered "petit mal" seizures. *Martinez* Report, p. 5.

6. KAN. ADMIN. REGS. 44–12–301 Fighting.

Fighting or other activity which constitutes violence, or which is likely to lead to violence, is prohibited unless such activity is in self-defense. Violation of this rule shall be a class I offense.

7. KAN. ADMIN. REGS. 44–12–401 Work performance.

(a) No inmate shall intentionally interfere with, delay, or disrupt work in progress, or sabotage the work, machinery, systems, or products, nor shall any inmate assist or participate in such actions. Violation of this rule shall be a class I offense.

(b) All inmates shall perform work assigned in the manner prescribed and according to the directives of his or her supervisor or other authorized official. Intentional failure to report to or depart from work at the prescribed time and without unnecessary delay enroute is prohibited. Violation of this rule shall be a class II offense.

(c) No inmate shall slow the work progress through carelessness or neglect. Violation of this rule shall be a class II offense.

(d) No inmate shall be tardy for work. Violation of this rule shall be a class III offense.

(e) Work as defined in this rule includes any work assignment, educational, vocational, counseling, or training program to which an inmate has been assigned.

ghini, the author of the document detailing the violation, "stated that plaintiff submitted a thread inventory count which was deliberately miscounted and resulted in needed thread not being ordered and unneeded thread being ordered." *Id.* Plaintiff denies he provided a false inventory to Impact, claiming instead that he provided no inventory at all. Specifically, plaintiff claims he was unable, due to the altercation, to finish the inventory and that Menghini knew of the altercation. Sawyer found plaintiff guilty of a work performance violation "based upon [Menghini's] report and statements." *Id.* at 7. While Menghini, on behalf of Impact, requested $3515.00 in restitution, Sawyer found that amount "to be excessive and ordered plaintiff to pay restitution in the amount of $2965.00." *Id.* As a result of this judgment, plaintiff's prison account has been "frozen." Plaintiff appealed this conviction and judgment, arguing Sawyer did not rely upon any evidence other than the statements of Menghini. Menghini, plaintiff alleged, did not produce any evidence to support his claimed loss. Simmons again denied plaintiff's appeal.

### 2. Relationship Between Impact And LCF

Plaintiff has filed suit against Schaefer and Menghini. It deserves special attention and explanation as to how these defendants came into contact with plaintiff and what relationship they maintain with the state of Kansas. Impact entered into a contract with the state of Kansas that allowed Impact to lease building space at LCF so that Impact could operate its busi-

ness.[8] Doc. 28, ¶ 7.[9] Under the terms of the lease, Impact agreed to employ inmates in its business and pay them not less than the federal minimum wage. Doc. 28, Ex. B. Impact was also allowed to

> deduct from said wages such amounts as necessary to reimburse Kansas for its expenses in fulfilling its obligations under this agreement as required and provided by law, regulation, and policy of [LCF] and applicable federal statutes and criteria under the Prison Industry Enhancement Certification Program.

*Id.* Furthermore, Impact agreed to pay the Department of Corrections $1.00 per month for every month of work in this area. As to their respective responsibilities of the inmates, LCF was required to "provide such corrections officers and coverage as [LCF] feels is necessary for supervision of inmates employed by [Impact] at times when such inmates are working." *Id.* In turn, Impact was to provide instruction to the inmates regarding the work they were to perform and supervise this job performance. Doc. 28, ¶ 11.

Impact, as an entity, is not a named defendant in this action; Schaefer and Menghini are. Doc. 28, p. 2. Both Schaefer and Menghini are employees of Impact. Schaefer is a supervisor and reportedly was one of the first to discover plaintiff after the incident. His interaction, as described above, relates solely to the incidents occurring on February 3, 1997. It does not appear he took any part in the subsequent events. Menghini, the President of Impact, actually signed the agreement between Impact and LCF. Unlike

---

**8.** The Secretary of Corrections has authority to enter into relationships like this with private firms or corporations. *See* KAN. STAT ANN. § 75–5288.

**9.** This statement is taken from the Impact defendants' supplemental statement of uncon-

troverted material facts. Doc. 28. Plaintiff's response "agree[d with] and acknowledge[d] Defendants' supplemental uncontroverted material facts, as stated in ¶ 7, ¶ 8, ¶ 9, ¶ 11, ¶ 12, ¶ 13, ¶ 14." Doc. 31, p. 1–2.

Schaefer, it appears he had little, if any, knowledge of or contact with the incident and plaintiff's injuries on February 3, 1997. His role in the events regarding plaintiff became noteworthy after the initial altercation. He filled out a report form indicating plaintiff's work performance caused his company a considerable loss and testified in a similar fashion at plaintiff's disciplinary hearing.

### B. Summary Judgment Standard

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citations omitted); *see also Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*).

Defendants initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Adler,* 144 F.3d at 670. Because plaintiff bears the burden of proof at trial, defendants need not "support [their] motion with affidavits or other similar materials *negating* [plaintiff's]" claims or defenses. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (emphasis in original). Rather, defendants can satisfy their obligation simply by pointing out the absence of evidence on

an essential element of plaintiff's claim. *See Adler,* 144 F.3d at 671 (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

If defendants properly support their motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See Mitchell v. City of Moore,* 218 F.3d 1190, 1197–98 (10th Cir.2000). In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler,* 144 F.3d at 671. If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994). Plaintiff "cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988). Put simply, plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Certain local rules further govern the presentation of facts and evidence. Local Rule 56.1 requires the movant to set forth a concise statement of material facts. D. Kan. Rule 56.1. Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the defendants rely. *See id.* The opposing memorandum must contain a similar statement of facts. Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the

number of the defendants' fact that he disputes. The court may, *but is not obligated to,* search for and consider evidence in the record that would rebut the defendants' evidence, but that plaintiff has failed to cite. *See Adler,* 144 F.3d at 672. All material facts set forth in the statement of defendants shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of plaintiff. *See id.; Gullickson v. Southwest Airlines Pilots' Ass'n,* 87 F.3d 1176, 1183 (10th Cir.1996) (applying local rules of District of Utah). A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. *See Thomas v. International Bus. Machs.,* 48 F.3d 478, 485 (10th Cir.1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. *See Adams,* 233 F.3d at 1246. Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. *See Cole v. Ruidoso Mun. Schs.,* 43 F.3d 1373, 1382 (10th Cir.1994) (regarding conclusory statements); *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1541 (10th Cir.1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). *See* Fed. R.Civ.P. 56(e); D. Kan. Rule 56.1; 10A

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (2d ed.1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. *See Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

### C. *Pro Se* Litigant Standard

■ Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel.[10] It has long been the rule that *pro se* pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir.1991); *Hill v. Corrections Corp. of America,* 14 F.Supp.2d 1235, 1237 (D.Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *See Hall,* 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the *pro se* litigant. *See id.* Plaintiff is expected to construct his own arguments or theories

---

10. This court, stepping well outside customary practice, appointed counsel for plaintiff's benefit. Doc. 42. Less than a week later, plaintiff fired counsel because he feared counsel was conspiring against him. Docs. 43 and

45. While plaintiff now laments his treatment of appointed counsel, this court is unwilling to once again extend this favor to plaintiff.

and adhere to the same rules of procedure that govern any other litigant in this district. *See id.; Hill,* 14 F.Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries. *See id.* Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions. *See id.* In the end, plaintiff's *pro se* status, in and of itself, does not prevent this court from granting summary judgment. *See Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992).

### D. Issues Presented By Defendants' Motions

Defendants have urged discrete arguments in support of their motions for summary judgment. Only those discrete issues presented in defendants' motions will be addressed. To the extent plaintiff has responded to these arguments in a discernable manner, this too will be considered.

Based upon the pleadings filed, this court has determined the following issues have been presented:

1. Did the state defendants violate plaintiff's Eighth Amendment rights? (Doc. 21, p. 3).
2. Did the state defendants deny plaintiff Due Process? (Doc. 21, p. 3).
3. Are the Impact defendants state actors? (Doc. 22, p. 4).

Any question not necessary to the determination of these issues is not properly before the court and therefore, no ruling will be made.

## II. ANALYSIS

■ Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 was enacted to provide protections to those persons wronged by the misuse of governmental power. While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. *See Wilson v. Stock,* 52 F.3d 1547, 1552 (10th Cir.1995). To state a claim for relief in a section 1983 action, a plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law. *See American Mfr's Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

### A. State Defendants

#### 1. Capacity and Immunity Issues

##### a. Determining Capacity

■ Plaintiff has alleged Simmons, McKune, and Sawyer ("state defendants") violated his constitutional rights. While suit may be maintained against government officials under section 1983 in their official, individual, or both official and individual capacities, it is helpful for analytical purposes if the role in which the defendants have been sued is made clear. In his "Request for Relief," plaintiff indicates he is seeking "Compensation Damages, Punitive Damages, Emotional Damages, from each defendant in their Official, & Individual Capacities [sic] . . . ." Doc. 1, Plaintiff's Petition. To this court, plaintiff's intent to sue in both their official and individual capacities is clear.

The state defendants apparently did not read this portion of plaintiff's pleading because they argue plaintiff "appears to have brought this suit against the defendants solely in their official capacities, since he

[does not] state otherwise." Doc. 21, p. 11. The Tenth Circuit has stated that when no clear declaration is made, this court must analyze both the substance of the pleadings and the course of the proceedings to determine whether the suit is for official or individual liability. *See Pride v. Lamb,* 997 F.2d 712, 715 (10th Cir.1993). Here, plaintiff has alleged he is entitled to punitive damages as well as injunctive and declaratory relief. Doc. 1, Plaintiff's Petition, Request for Relief. Seeking relief in this manner is a strong indicator the suit seeks both personal and official liability. *Cf. Pride* 997 F.2d at 715. Furthermore, the state defendants have raised both official capacity defenses and qualified immunity to plaintiff's claims. Doc. 21, pp. 11–14. This fact too supports the court's conclusion that plaintiff's suit is for both official and individual liability. *See Pride,* 997 F.2d at 715–16. Accordingly, this court finds that plaintiff's suit is against the state defendants in both their official and individual capacities. *See id.*

### b. Official Capacity

■ Pointing to *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the state defendants assert they are not a "person" as the term is used in section 1983. Doc. 21, p. 12. To the extent plaintiff is seeking monetary damages from the state defendants in their official capacity, the motion for summary judgment must be granted. *See, e.g., McLaughlin v. Board of Trustees of State Colleges of Colorado,* 215 F.3d 1168, 1172 (10th Cir.2000) (relying upon *Will,* 491 U.S. at 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) for the proposition that

state officials acting in their official capacities are not "persons" under section 1983).[11]

### c. Individual Capacity: Qualified Immunity Defense

The state defendants have also alleged that if plaintiff is proceeding against them in their individual capacity, they are clothed with qualified immunity. Because qualified immunity will apply to each of the specific claims, the court will first set forth the principles outlined by the Supreme Court and the Tenth Circuit.

As noted earlier, when government officials abuse their power, section 1983 suits allow those wronged an effective method of redress. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). While permitting the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and those government officials charged with enforcing the law. *See Anderson,* 483 U.S. at 638, 107 S.Ct. 3034. Indeed, both the Supreme Court and the Tenth Circuit have recognized these suits may unduly interfere with the discharge of discretionary duties due to the constant fear of civil litigation and potential monetary damages. *See Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Wilson v. Stock,* 52 F.3d 1547, 1552 (10th Cir.1995). "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most

---

**11.** The court notes the state defendants have not moved for summary judgment as to prospective injunctive or any other available relief. *See Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' "); *McLaughlin,* 215 F.3d at 1172 (10th Cir.2000) (citing *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304).

resolute, or the most irresponsible, in the unflinching discharge of their duties." *Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1277 (10th Cir.1998) (internal quotations omitted) (citing *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949)).

■■ In order to balance these competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. *See Anderson*, 483 U.S. at 638, 107 S.Ct. 3034. Qualified immunity protects these officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir.1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.[12] *See Horstkoetter*, 159 F.3d at 1277.

■ "The framework for analyzing claims of qualified immunity on summary judgment is well settled." *Baptiste*, 147 F.3d at 1255. When a defendant has pled qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendants' actions violated a federal constitutional or statutory right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. *See Horstkoetter*, 159 F.3d at 1277–78; *Baptiste*, 147 F.3d at 1255. As noted in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043

(1998), the first step is "to determine ... whether the plaintiff has alleged a deprivation of a constitutional right at all." *Lewis*, 523 U.S. at 841 n. 5, 118 S.Ct. 1708; *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995). "Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue." *Baptiste*, 147 F.3d at 1255 n. 6.

### (1) Violation of Constitutional Right

This court must first determine whether each of plaintiff's allegations, if true, state a claim for a violation of a constitutional right. *See Romero*, 45 F.3d at 1475 (relying in part upon *Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question.[13] *See id.* Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court cannot avoid the legal issue by simply framing it as a factual question. *See Archer v. Sanchez*, 933 F.2d 1526, 1530 & n. 7 (10th Cir.1991).

### (2) Clearly Established

Even if a plaintiff states a violation of a constitutional right, the Tenth Circuit requires the contours of the right at issue to have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *See Watson v. University of Utah Med. Ctr.*,

---

12. One of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Anderson*, 483 U.S. at 646 n. 6, 107 S.Ct. 3034.

13. Similarly, whether the right was clearly established at the time the incident occurred is also a legal question. *See Romero*, 45 F.3d at 1475 (relying in part upon *Siegert*, 500 U.S. at 231–32, 111 S.Ct. 1789).

75 F.3d 569, 577 (10th Cir.1996). This standard, however, must be used in a particularized manner [14] because "[o]n a very general level, all constitutional rights are clearly established." *Horstkoetter*, 159 F.3d at 1278. Were this level of particularity not required, *Harlow* "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" *Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034 (quoting *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

■ A plaintiff's burden at this stage has been described as "quite heavy," as it is insufficient to simply allege a violation of a general legal principle. *See Watson*, 75 F.3d at 577. In order to discharge this burden, a plaintiff must do more than simply identify in the abstract a clearly established right and allege that the defendants have violated it. *See Baptiste*, 147 F.3d at 1255. Rather, plaintiff must (1) articulate the constitutional right, (2) state, with specificity, the defendants' conduct that has allegedly violated this right, and (3) demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendants' actions were clearly prohibited. *See id.; Romero*, 45 F.3d at 1475. Unless such a showing is made, defendants prevail. *See Romero*, 45 F.3d at 1475. Even if a plaintiff is able to avoid summary judgment, the defendants are nonetheless able to reassert the defense of qualified immunity at trial. *See Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir.1996).

**2. Specific Claims**

**a. Deliberate Indifference to Medical Needs**

■ The Eighth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment upon prisoners. *See Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 809 (10th Cir.1999). Prison officials violate this prohibition when they act deliberately indifferent to serious medical needs of prisoners in their custody. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999). As defined by the Supreme Court, "deliberate indifference" consists of both an objective and subjective component. *See Sealock*, 218 F.3d at 1209 (relying upon *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

■ The objective component of the deliberate indifference standard requires plaintiff's injuries to be sufficiently serious. *See Hunt*, 199 F.3d at 1223. A medical need is sufficiently serious if a physician has diagnosed it as mandating treatment or if the need is so obvious that even a lay person could easily recognize the necessity for a doctor's attention. *See id.; Sealock*, 218 F.3d at 1209. Here, the state defendants agree, as they must, plaintiff's injuries were such that any person could have recognized his need of immediate medical attention.

■ State defendants argue, however, that plaintiff initially refused medical assistance from Schaefer, *Martinez* Report, p. 3, and prison officials, upon being alerted

---

**14.** The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995); *see also Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1278 (10th Cir.1998).

to plaintiff's condition, immediately brought plaintiff to the prison medical staff who then took him to an outside hospital. Doc. 21, p. 10. These arguments go towards the subjective component of the deliberate indifference standard. "In terms of the subjective component, i.e., the requisite deliberate indifference, [plaintiff] must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at 1224 (citing *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970). The state defendants point to their lack of knowledge to absolve them of liability. Ordinarily the question of whether the state defendants had the requisite knowledge is a question of fact that is often inappropriate for this court to determine during the summary judgment stage. *See Perkins*, 165 F.3d at 809–10 (stating this question is subject to demonstration in the usual ways including inferences from circumstantial evidence). Here, however, the court need not be so restrained.

The state defendants here are not the prison officials typically named in prisoner litigation involving allegations that they were personally acting with deliberate indifference to medical needs. They are supervisory officials, disconnected in most respects from the prisoners and their daily functions. This point is especially true here where there is no allegation in plaintiff's voluminous pleadings that any of them had any knowledge of or contact with plaintiff with respect to the confrontation or the alleged order requiring plaintiff to return to his cell.

For example, plaintiff has not alleged Sawyer had any knowledge of him, his injuries, or even the altercation before the disciplinary hearing that occurred nearly two months later. Likewise, plaintiff's only reference to Simmons is that he essentially "rubber-stamped" Sawyer and McKune's decision made in relation to the disciplinary hearing. Even McKune, the warden of LCF, appears, based upon plaintiff's averments, to have been without knowledge of the altercation or plaintiff's resulting injuries. Based upon plaintiff's pleadings, it appears plaintiff was injured, went to his cell, and, the following morning, requested and received help from prison security officials. There is no allegation any of the named state defendants had any contact or knowledge of plaintiff's injuries while he was in need of medical care. Moreover, it does not appear any of the state defendants took any action contrary to plaintiff's wishes until the disciplinary hearings. Because plaintiff has failed to intimate any fact indicating the state defendants had any knowledge as to his physical condition, it is impossible for a jury to conclude they were "deliberately indifferent" to his need for medical care. *Compare Olson v. Stotts*, 9 F.3d 1475, 1476 (10th Cir.1993) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." (internal quotation marks omitted)); *with Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir.1997) (reversing grant of summary judgment because plaintiff alleged the warden had specific knowledge of the need for medical care).

 Even though the state defendants did not have personal contact with or knowledge of plaintiff's medical need, they could, in some circumstances, be liable in their supervisory capacity. As a general rule, an individual ordinarily cannot be held liable in a section 1983 action pursuant to a theory of respondeat superior. *See Hill v. Corrections Corp. of America*, 14 F.Supp.2d 1235, 1238 (D.Kan.1998) (citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct.

598, 46 L.Ed.2d 561 (1976) and *Kite v. Kelley*, 546 F.2d 334 (10th Cir.1976)). For supervisory liability to attach, the Tenth Circuit requires an affirmative link between the constitutional deprivation and (1) the supervisor's personal participation, (2) the exercise of control or direction, or (3) the failure to supervise. *See Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000). Plaintiff does not point to any facts, in a conclusory manner or otherwise, that would tend to establish any link between the acts of the Impact defendants and any act or omission of the state defendants.[15]

Accordingly, the state defendants' motion for summary judgment as it relates to plaintiff's claim of deliberate indifference to known medical needs is granted.

### b. Due Process Violation

Plaintiff's claim involving due process invokes the protections first set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Specifically, plaintiff claims he was charged and punished for violating prison regulations without sufficient evidence to support the charge. The state defendants have raised various argument against plaintiff's claim.

### (1) Is plaintiff's claim cognizable under section 1983?

Before addressing the merits of plaintiff's claim, defendants first argue plaintiff's due process claim and the relief it seeks are foreclosed by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Doc. 21, p. 5. In *Heck*, the plaintiff filed a section 1983 suit, seeking money damages for the defendants' allegedly unlawful investigation and conviction of him. *See id.* at 479, 114 S.Ct.

2364. The Supreme Court held that the state prisoner's claim for damages was not cognizable under section 1983 if a judgment in favor of plaintiff necessarily implies the invalidity of his conviction or sentence unless the prisoner can demonstrate the conviction or sentence has been previously invalidated. *See id.* at 487, 114 S.Ct. 2364. The state defendants contend *Heck* bars plaintiff's claim under *Wolff*. In *Heck*, however, the Court addressed *Wolff* and stated, in dicta, that it was plausible that a section 1983 claim may lie for "using the wrong procedures, not for reaching the wrong result." *Id.* at 482–83, 114 S.Ct. 2364. This argument resurfaced three years later in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

Hoping to avoid *Heck's* holding, the plaintiff in *Balisok* "limited his request to damages for depriving him of good-time credits without due process, not for depriving him of good-time credits undeservedly as a substantive matter." *Id.* at 645, 117 S.Ct. 1584. In effect, plaintiff argued that even if he was guilty of the disciplinary infraction, he should be compensated for the unconstitutional procedures used in "convicting" him of that infraction. *See id.* The Court disagreed, however, holding the allegation made by plaintiff, that the hearing officer's decision to deprive him of good-time credits due to bias and deceit, would "necessarily imply the invalidity of the punishment imposed," and be barred by *Heck. See id.* at 648, 117 S.Ct. 1584.

 Though the *Balisok* holding is not squarely on point, Justice Ginsburg's concurrence is very illuminating as to the issue presented in this case. She drew a distinction between allegations of bias and allegations involving the "failure of prison official[s] ... 'to specify what facts and

---

**15.** In addition, as will be discussed below, the Impact defendants, insofar as the Eight Amendment claim is concerned, are not state actors and therefore cannot violate plaintiff's constitutional rights.

evidence supported the finding of guilt.'" *See id.* at 649–50, 117 S.Ct. 1584 (Ginsburg, J., concurring). The former she agreed was not cognizable under section 1983 but, on the understanding that the latter would not imply the invalidity of the deprivation of good-time credits, she joined the Court's opinion. *See id.* (Ginsburg, J., concurring). Albeit a three member concurrence, this court finds Justice Ginsburg's distinction especially salient here. Because plaintiff is alleging the facts and evidence before Sawyer were insufficient to support the order of restitution, the court finds his claim is cognizable under section 1983. *See Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (relying in part upon *Balisok,* 520 U.S. at 649–50, 117 S.Ct. 1584 (Ginsburg, J., concurring)) ("If, for example, petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' [*see Heck v. Humphrey,* 512 U.S. 477, 482–483, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ], and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, [*see id.* at 487, 114 S.Ct. 2364], then [*Heck* ] would have no application all.").

### (2) Constitutional Standard

■ Moving now to the merits of plaintiff's claim, the court recognizes pris-

on disciplinary proceedings are not part of a criminal prosecution procedure and therefore the "full panoply of rights due a defendant" does not apply. *See Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Due process, nonetheless, requires a certain degree of procedural protections before a prison inmate can be deprived of a protected interest. *See id.* In order to provide adequate due process in a prison disciplinary setting, the prisoner must receive (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir.1996) (relying upon *Wolff*); *see also Smith v. Maschner,* 899 F.2d 940, 946 (10th Cir.1990). In the present case, both parties agree the *Wolff* framework applies [16] and do not materially dispute that the first two requirements were met. Plaintiff's sole point of contention relates to the third prong of the *Wolff* analysis. Specifically he claims the evidence relied upon by Sawyer was insufficient to satisfy his due process rights.[17]

■ To determine whether plaintiff's due process rights were violated by Saw-

---

**16.** Most cases undertaking a *Wolff* analysis apply the test to a loss of good-time credits situation. *See, e.g., Massachusetts Correctional Inst. v. Hill,* 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Though the parties have not briefed the issue, this court assumes the *Wolff* test applies to the various protected interests and *is not limited to* good-time credits. *See Wolff,* 418 U.S. at 556, 94 S.Ct. 2963 ("Prisoners may ... claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.").

**17.** It appears to the court Sawyer might have been able to take advantage of the absolute immunity usually afforded quasi-judicial offi-

cers. *See Butz v. Economou,* 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Whitesel v. Sengenberger,* 222 F.3d 861, 867–68 (10th Cir.2000). Because Sawyer did not raise this argument, this court will not address it. *See, e.g., Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."); *Capps v. Cowley,* 63 F.3d 982, 984 (10th Cir.1995) (citing *Pelfresne* ); *Robinson v. Tenantry (In re Robinson),* 987 F.2d 665, 668 (10th Cir.1993); *Phil-*

yer's actions, it is helpful to review the purpose for requiring a written statement of reasons. In *Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the Supreme Court stated that while *Wolff* did not require either judicial review or a specified amount of evidence to sustain the disciplinary board's authority, such a record would assure that administrators, when faced with the potential of outside scrutiny, would act fairly in dealing with fundamental human rights. *See Hill,* 472 U.S. at 454, 105 S.Ct. 2768. Therefore, in order to meet the minimal due process standards set forth in *Wolff,* the *Hill* Court held the written findings of the prison disciplinary board must be supported by some evidence in the record. *Hill,* 472 U.S. at 454, 105 S.Ct. 2768.

The "some evidence" standard was set by balancing the *Hill* inmates' interests in protecting their liberty interests in good time credits against the prisons administration's interest in maintaining order. *See id.* at 454–55, 105 S.Ct. 2768. "Some evidence" is a very low threshold and is met if there is some way to deduce how the disciplinary tribunal's decision was made. *See id.* at 455, 105 S.Ct. 2768; *Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir.1996) (stating a decision may be upheld even if the evidence is meager). When reviewing Sawyer's decision, this court is not given the discretion to examine the entire record, make independent assessments of witness credibility, or weigh the evidence. *See Hill,* 472 U.S. at 455, 105 S.Ct. 2768. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by [Sawyer]." *Id.* at 455–56, 105 S.Ct. 2768.

As neither plaintiff nor the state defendants briefed this issue beyond a simple

*lips v. Calhoun,* 956 F.2d 949, 953 (10th Cir.

citation to *Wolff,* the court relies upon its independent research that has uncovered several Tenth Circuit cases dealing with this *Wolff/Hill* issue. In *Smith v. Maschner,* plaintiff cited *Wolff* and claimed he was denied due process because, *inter alia,* the prison board "failed to make findings of fact supporting each guilty verdict . . . ." *Smith,* 899 F.2d 940, 945 (10th Cir. 1990). The Tenth Circuit denied the plaintiff relief because, while the board did not provide a written statement of the evidence supporting the disciplinary action, the plaintiff was provided a written transcript of the proceeding. *See id.* at 946. "Providing a written transcript more than suffices to insure adequate review of the proceedings, to protect the inmate against collateral consequences, and to guarantee that ·officials, faced with outside scrutiny, will act fairly." *Id.* (relying upon *Ruiz v. Estelle,* 679 F.2d 1115, 1155 (5th Cir.1982) (modified on other grounds) for the proposition that a tape recording of the disciplinary hearing exceeds *Wolff's* requirement of written findings). Unlike *Maschner,* however, plaintiff does not allege he was not provided documentary evidence of the proceedings, but rather claims the content of the proceedings and record is insufficient to warrant the imposition of the restitution order.

In *Mitchell v. Maynard,* the Tenth Circuit reviewed the plaintiff's *Wolff* challenge to the adequacy of the evidence used to convict him of participating in a riot. *See* 80 F.3d at 1444. As a result of this conviction, Mitchell's good time credits were revoked. *See id.* He claimed the disciplinary hearing was procedurally deficient because his conviction was based upon evidence contained in an officer's report that was obtained from another officer. *Id.* at 1445. Despite the "second-

1992) (citing *Pelfresne* ).

hand" or hearsay evidence, the Tenth Circuit held this type of evidence was sufficient to sustain a conviction for participating in a riot. *See id.* (citing *Taylor v. Wallace*, 931 F.2d 698, 703 (10th Cir.1991)) (noting the Tenth Circuit had previously upheld a disciplinary conviction based upon the statement of a confidential witness). Concluding it was not the job of the reviewing court to address the validity of the evidence, the Tenth Circuit affirmed the district court's grant of a directed verdict on the due process challenge. *See id.*

In *King v. Fields*, No. 97–6327, 1998 WL 243798 (10th Cir. May 14, 1998), the sufficiency of the evidence issue was once again addressed by the Tenth Circuit.[18] King was accused of misconduct for engaging in sexual activity and the hearing officer "found plaintiff guilty of the offense, citing as the basis for his finding the correctional officer's 'statement that [King] and [another inmate],'" were engaged in a sex act. *King*, 1998 WL 243798, at *1. Plaintiff argued that this statement did not satisfy the third *Wolff* requirement. *See id.* The Tenth Circuit held that while the evidence was minimal, *Wolff* was satisfied because the statement informed plaintiff of the evidence relied upon and "[t]he charge was not complex...." *Id.*

Reading these cases together, the court is convinced the standard for judging the adequacy of Sawyer's decision is quite low. Unlike *King, Mitchell,* and *Taylor,* however, neither the charge nor the punishment against plaintiff is so simple. He was not charged with rioting, where the proof needed to convict could be a simple eyewitness, undisclosed or otherwise. *See Mitchell,* 80 F.3d at 1445; *Taylor,* 931 F.2d at 703. Nor was he charged with

engaging in an indiscreet act with another inmate where, again, simple eyewitness testimony would be sufficient evidence. *See King*, 1998 WL 243798, at *2. As discussed in greater detail below, plaintiff was charged with causing a significant loss to a business operation, found guilty based upon evidence that would be appropriate only for simple violations, and ordered to pay restitution of nearly $3,000. The factual disagreement between the state defendants and plaintiff goes directly to the evidence necessary to prove a constitutional violation.

To begin with, the charges against plaintiff were fairly complex yet the evidence cited by Sawyer was minimal, if not wholly lacking. For example, plaintiff was charged with deficient work performance, in violation of KAN. ADMIN. REGS. 44–12–401,[19] for failing to satisfactorily complete the inventory. Based upon the handwritten notes of Sawyer,[20] it appears Menghini was the only witness who claimed plaintiff's failure to provide an accurate account of the inventory cost Impact $3,515.00. *See* Doc. 1. (Handwritten notes on Disciplinary Case Number 0640). Plaintiff was the only other witness and he denied Menghini's assertions. Even assuming this testimony was sufficient to sustain a "conviction" for deficient work performance, it is quite another matter to parlay this "conviction" for performing poorly into the conclusion that it caused a business (of unknown size or complexity) to lose nearly $3,000. Even if this causal link could be established, plaintiff claims, *and the state defendants do not dispute, that no such evidence was presented.*

---

**18.** Though unpublished, the court finds *King* is persuasive authority. *See* 10th Cir. R. 36.3(b).

**19.** See note 7, *supra.*

**20.** There is no dispute plaintiff received these notes after the hearing.

Sawyer found plaintiff guilty of violating section 401 "based on the testimony given" and ordered $2,965.00 [21] in restitution as the "cost for correcting order." Doc. 1. (Handwritten notes on Disciplinary Case Number 0640). As a result of this "sentence," plaintiff's prison account has allegedly been "frozen" since this hearing, denying him the opportunity to purchase various items from the prison "canteen."

Because of the importance of the procedures used by Sawyer, it is helpful to review the regulations set forth by Kansas law for situations like this. Under the administrative regulations applicable to LCF, plaintiff was charged with and found guilty of deficiently performing his work duties in violation of KAN. ADMIN. REGS. 44–12–401. It is not clear what degree of violation plaintiff was charged but assuming it was the most severe, a "class I offense," there appears to be two potential justifications for entering a monetary "judgment" against him. First, Sawyer would have been justified in imposing "a fine, not to exceed $20.00." KAN. ADMIN. REGS. 44–12–1301 (classifying the maximum penalty for class I offenses). Since she could not levy a fine in excess of $20.00, it is more likely Sawyer chose the alternative route—restitution.

Sawyer's discretion in ordering restitution is constrained by KAN. ADMIN. REGS. 44–12–1306. First, "the appropriateness of restitution ordered shall be determined by consideration of the factors set forth in [KAN. ADMIN. REGS.] 44–12–1307." KAN. ADMIN. REGS. 44–12–1306(a)(2). Section 1307 states restitution "shall be fairly and appropriately used," and should "not be used . . . in such a way . . . to interfere with the inmate's ability to purchase basic hygiene items." KAN. ADMIN. REGS. 44–12–1307. While not dispositive, the restitution far exceeded the maximum possible fine and the evidence adduced during the disciplinary hearing does not promote any confidence that her restitution order was either fair or appropriate. Moreover, plaintiff has alleged, and again the state defendants do not dispute, that the restitution order has prevented him from purchasing basic hygienic necessities from the prison canteen, arguably a violation of procedure.

Furthermore, section 1306(a)(5) sets forth procedural safeguards Sawyer was charged with executing in a restitution scenario.[22] First, the prisoner must be given notice of the "amount of value of the property which will constitute the basis for restitution," no later than the beginning of the disciplinary hearing. KAN. ADMIN. REGS. 44–12–1306(a)(5). Sawyer also had a duty to "limit the evidence to a reasonable amount and extent as is appropriate to the nature of the administrative hearing, the level of the offense, and the extent of possible impact on the inmate's resources." *Id.* It appears Sawyer may have failed in both accounts. Plaintiff has alleged, and the state defendants do not dispute, the state defendants did not notify plaintiff he would be responsible for "restitution" in the amount of nearly three thousand dollars. Finally, not only is there a lack of

---

21. There is no indication in either the briefs or the record of the hearing how Sawyer arrived at this figure. Menghini's figure was $3,515. In Menghini's closing statement, he allegedly stated his loss consisted of: $890.00 for lost revenue; $325.00 for thread he erroneously ordered in reliance on the inventory but could not be returned; $140.00 for lost supervisor labor; $1,750.00 for accounting costs; $320.00 for book keeping, postage, and various other items. Doc. 1. (Handwritten notes on Disciplinary Case Number 0640).

22. The prisoner must be given an opportunity to present contrary evidence to mitigate or eliminate a restitution order. *See* KAN. ADMIN. REGS 44–12–1306(a)(5). By all accounts, plaintiff was given this opportunity.

"some evidence" that Sawyer failed to tailor the evidence to the nature and extent of the restitution, there is no evidence she employed any safeguards in this manner.

■ The court finds plaintiff's allegations, if proven, could establish a violation of his right to procedural due process. In addition, there are existing disputes of material facts as to the hearing and evidence presented. Having concluded these facts could show a violation of constitutional rights, the next issue is whether this right was clearly established at the time of the hearing. This step is much simpler. Because all of the legal principles have been utilized and implemented in the Tenth Circuit for many years predating Sawyer's actions, there can be no doubt the right was "clearly established" as used in qualified immunity parlance.

Accordingly, summary judgment is denied as to plaintiff's *Wolff/Hill* claim against the state defendants.

## B. Impact Defendants and State Action Doctrine

■ Plaintiff alleges Menghini and Schaefer ("Impact defendants") violated his constitutional rights by failing to properly treat his medical condition and by depriving him of his money in the disciplinary hearing.[23] The Impact defendants have moved for summary judgment solely on the basis that any actions they took

with respect to plaintiff were not "under color of state law"[24] and therefore no section 1983 liability may attach. Accordingly, the only issue presented by the Impact defendants to this court is whether they acted "under color of law" as required by section 1983.

### 1. Tenth Circuit "Under Color Of"

#### a. Analytical Framework

■ "Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir.1995) (citing *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)). As the Tenth Circuit has noted, the "under color" requirement is a jurisdictional requisite for a section 1983 claim. *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir.1995). As such, it is of no consequence how discriminatory or wrongful the actions a plaintiff may describe; merely private conduct does not satisfy the "under color of" element and therefore no section 1983 liability exists. *See Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294–96, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001); *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). While the element of "under color" and "state action" are theoretically different,

---

**23.** As an initial matter, the court notes plaintiff's claims against the Impact defendants are not proper against each defendant. Assuming, *arguendo*, the Impact defendants are state actors, summary judgment will be proper at least in part. With respect to the Eighth Amendment claim, plaintiff has failed to allege Menghini had any knowledge of his condition or in anyway caused his suffering. Likewise, plaintiff has failed to allege or present evidence Schaefer took part in any deprivation. As such, the motion for summary judgment is granted as to Menghini on the Eighth Amendment claim and is granted as to Schae-

fer on the Due Process claim. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir.1998) ("In other words, a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation.").

**24.** As private persons, the Impact defendants have no qualified immunity defense. *See Wyatt v. Cole*, 504 U.S. 158, 168, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

for purposes of this memorandum and order, "the under-color-of-law requirement ... and the state-action requirement of the Fourteenth Amendment are equivalent."[25] *Tarkanian*, 488 U.S. at 180 n. 4, 109 S.Ct. 454.

▮▮▮ Like the state action doctrine, requiring an act to be taken "under color of [state] law" furthers the fundamental constitutional goals of preserving an area of individualized freedom by limiting the reach of federal law and judicial power and avoids imposing on the state, its agencies, or officials responsibility for conduct for which they cannot be fairly blamed. *See Brentwood Academy*, 531 U.S. at 294–96, 121 S.Ct. 924; *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir.1995). To meet these goals and hold private defendants, which the Impact defendants most certainly are, liable under section 1983, the Tenth Circuit and Supreme Court have "insisted that the conduct allegedly causing the deprivation of a federal right be *fairly attributable* to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (emphasis added); *see also Scott v. Hern*, 216 F.3d 897, 906 (10th Cir.2000). In order to establish the conduct is in fact "fairly attributable" to the state, plaintiff must demonstrate that (1) the alleged deprivation of his constitutional rights was caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible and (2) the Impact defendants must "fairly be said to be ... state actor[s]." *See Gallagher*, 49 F.3d at

1447. "This second requirement, however, simply restates the essential question, namely, under what circumstances should an ostensibly private defendant be treated as a state actor?" MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, 1A SECTION 1983 LITIGATION: CLAIMS AND DEFENSES 519 (3d ed.1997) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

#### b. Four Tests for State Action

▮▮▮ Determining whether certain conduct is considered state action is "one of the more slippery and troublesome areas of civil rights litigation," that "frequently admits no easy answer." *Gallagher*, 49 F.3d at 1447 (quoting *International Soc'y for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 255 (2d Cir.1984) and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (internal quotation marks omitted)). Despite this lack of clarity, the Tenth Circuit has identified four tests to help determine whether private defendants' actions are "fairly attributable" to the state. *See Gallagher*, 49 F.3d at 1447; *but see Lugar v. Edmondson Oil Co.*, 457 U.S. 922 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (refusing to decide whether these are tests or simply different ways of characterizing the fact-based inquiry). First, the "nexus" test considers "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated

---

**25.** As to the need to illuminate and define the precise distinction between "state action" and "under color of law":

> Courts often proceed directly to the state action question without any independent color of law analysis. If state action is found, that finding will automatically satisfy the color of law requirement. On the other

hand, if there is no state action, the [section] 1983 claim fails because of the absence of a proper Fourteenth Amendment claim, and there is no need to determine the color of law issue.

MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, 1A SECTION 1983 LITIGATION: CLAIMS AND DEFENSES 511 (3d ed.1997) (footnote citations omitted).

as that of the State itself." *Id.* (internal quotation omitted). The "symbiotic" test looks at "whether the state has 'so far insinuated itself into a position of interdependence' with the private party that there is a 'symbiotic relationship' between them." *Id.* (quoting *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). The third, called the "joint activity" test, states that "if a private party is a 'willful participant' in joint activity with the State or its agents' then state action is present." *Id.* (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation partially omitted)). The final test, known as the "exclusive powers" doctrine, states that a "private entity that exercises 'powers traditionally exclusively reserved to the State' is engaged in state action." *Id.* (quoting *Jackson,* 419 U.S. at 352, 95 S.Ct. 449).

While described as "tests," there is some reason to believe these are but factors or circumstances to consider. Recently, the Supreme Court, in *Brentwood Academy,* noted that whether an ostensibly private actor could fairly be considered a state actor is a matter of judgment, without rigid criteria or guidance. *See Brentwood Academy,* 531 U.S. at 294–96, 121 S.Ct. 924. This notion is not a departure from prior Supreme Court cases nor necessarily inconsistent with existing Tenth Circuit law. *See Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 621–22, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (noting Court precedent requires a consultation of several of the aforementioned factors to determine whether a particular action or course of conduct is governmental in character); *Anaya v. Crossroads Managed Care Systems, Inc.,* 195 F.3d 584, 596 (10th Cir.

1999) (stating the *Gallagher* "tests" will apply with more or less force depending upon the facts of the case). As such, the following analysis looks at the traditional "tests" but also considers other relevant factors that may be applicable. *See Brentwood Academy,* 531 U.S. at 295–97, 121 S.Ct. 924.

### c. Act–Specific Inquiry

Where, as here, a plaintiff has alleged private defendants have engaged in more than one allegedly unconstitutional act, it is important to note that "an individual or entity may be engaged in state action for one purpose but not for another." MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, 1A SECTION 1983 LITIGATION: CLAIMS AND DEFENSES 521–22 (3d ed.1997) (citing *Moose Lodge v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and *Powe v. Miles,* 407 F.2d 73, 81 (2d Cir. 1968)); *Compare also Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (holding criminal defense attorney is generally not a state actor); *with Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (holding criminal defense attorney's exercise of peremptory challenge is state action). As such, the proper inquiry is whether the Impact defendants' conduct constitutes state action in the specific instance, not whether they can be given a blanket description of "state actor." *Cf. Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (citing *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)) ("Thus, in determining immunity, we examine 'the nature of the function performed, not the identity of the actor who performed it.' "). Therefore, this court must independently apply these tests to each incident plaintiff alleges violated his constitutional rights.

### 2. Specific Claims

#### a. Eighth Amendment: Schaefer

■ Plaintiff primarily claims [26] Schaefer was a state actor with respect to the Eighth Amendment claim because Impact had contracted with the state and/or Impact was performing an exclusive function of the state. Doc. 47, p. 3; Doc. 47, p. 4. As to the first contention, the courts appear unanimous in holding mere contractual relations with the state will not, without more, make an individual's actions attributable to the state. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir.1995) (citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) and *Rendell–Baker v. Kohn*, 457 U.S. 830, 840–42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). Accordingly, this court must look determine whether there are any facts to support plaintiff's allegation Schaefer was performing an exclusively public function. Doc. 47, p. 4.

Before analyzing plaintiff's claim further, a point of clarification must be made. As the Impact defendants point out, plaintiff has not brought suit against Impact, but only against two of its employees, Schaefer and Menghini. Doc. 28, p. 2. Neither Schaefer nor Menghini are employees or agents of the state of Kansas, any of its agencies, or LCF. Doc. 22, ¶¶ 1, 3. Herein lies the problem: plaintiff claims Schaefer, an employee of an entity not party to this suit, was exercising state power obtained through the delegation of power from the state to the unnamed entity. Moreover, Schaefer, as an individual, is alleged to have been performing the task of rehabilitating and correcting the behavior of convicted prisoners.

With this in mind and upon reviewing various applications of the public function test, it appears this court must analyze whether Schaefer's employer, Impact, though not a party, was performing an act traditionally and exclusively reserved to the state. While this court is unable to locate, in either the parties' briefs or through its own research, any Tenth Circuit law indicating the propriety of this inquiry, several factors counsel support. First, in order to establish Schaefer was a state actor, plaintiff must establish Schaefer was clothed with the authority of state law. *See Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir.1995). Having conceded Schaefer is not an employee of the state, the only other potential origin of this authority must come from the state's relationship with Impact, Schaefer's employer. In addition, courts from other jurisdictions have stated that focusing upon the employer's business purpose is necessary to analyze a state action claim under the public function test. *See, e.g., George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir.1996) (indicating the relevant inquiry was whether the entity's purpose for business decision was considered "state action"). Finally, this court must analyze Impact's actions because it is nearly impossible for Schaefer, by himself, to be or have been performing any function that has been exclusively reserved to the state.

■ Under the "public function" theory, the private party is considered a state actor if a state delegates to a private party a function that is traditionally viewed as being exclusively reserved to the state. *See Gallagher*, 49 F.3d at 1456. Some

---

**26.** Plaintiff's rambling pleadings also allege Schaefer was a state actor because he violated administrative regulations and/or Impact's agreement with the state. Doc. 31, p. 4; Doc. 47, pp. 3, 16. This allegation, even if true, does nothing to prove Schaefer was or was not a state actor.

examples where courts have found this exclusive reservation include (1) administering elections of public officials, (2) operating a company-owned town, and (3) managing a city park. *See id.* (collecting cases). As evidenced by the limited number of situations that have been identified by the Supreme Court, this test is very difficult to satisfy because, while many functions have traditionally been *performed* by the state, very few have been *exclusively reserved* to the state. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ To support his claim that Schaefer is a state actor, plaintiff claims that Impact is performing a function traditionally performed only by the state—correction and rehabilitation of criminals. Doc. 47, p. 4. This argument, however, misses the point. As noted in *George,* the focus is not upon the effect of the business but rather upon the primary purpose of the business. *See George,* 91 F.3d at 1230. All parties agree Impact is in the business of making a profit through its embroidery business. The fact Impact undertakes this endeavor with the aid of inmate labor and within the confines of a correctional facility is merely incidental to its legal business plan. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.,* 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)) ("The fact '[t]hat a private entity performs a function which serves the public does not make its acts [governmental] action.'"). In fact, it is quite clear Impact did not enter into a relationship with LCF in order to rehabilitate inmates. The evidence points overwhelmingly to the contrary. The idea that Impact is even tangentially interested in the rehabilitation of inmates is contradict-

ed by its efforts to collect judgment from plaintiff for his allegedly deficient work performance. Based upon the undisputed evidence in the record, it is evident Impact is not in the business of performing a function exclusively reserved to the state. As such, Schaefer cannot be said to have acted under the badge of authority derived from the state or LCF. In addition, plaintiff has failed to set forth any facts that would tend to suggest any other reason to conclude Schaefer's acts, whatever they may have been, were taken under color of state law.

The Impact defendants' motion for summary judgment as to the Eighth Amendment claim is granted.

### b. Due Process Violation: Menghini

As to Menghini, plaintiff's allegations indiscriminately point to every test imaginable in support of his allegation Menghini was a state actor with respect to Menghini's complaint and testimony in the disciplinary proceeding. Based upon the allegations and applicable law, this court need not engage in an exhaustive review of every random allegation. *See Anaya,* 195 F.3d at 596 (stating the applicability of one test over the other depends on the facts of the particular case). If plaintiff's claim against Menghini is to survive summary judgment, its greatest chance is under the joint action/willful participant theory. *See Sigmon v. CommunityCare HMO, Inc.,* 234 F.3d 1121, 1125 (10th Cir.2000) (analyzing plaintiff's complaint under the conspiracy test as it most closely represented the "gravamen" of appellant's argument).

■ In essence, plaintiff alleges the state defendants and Menghini conspired to deprive him of access to his money. The Tenth Circuit has often recognized that a private defendant may be considered a state actor if he is a willful partici-

pant in a joint effort to deprive an individual of constitutional rights. *See Sigmon,* 234 F.3d at 1125; *Anaya,* 195 F.3d at 596; *Gallagher,* 49 F.3d at 1453. Under this approach, the court must look to whether the state defendants and Menghini acted in concert to affect a particular constitutional deprivation. *See Gallagher,* 49 F.3d at 1453. Specifically, plaintiff must point to facts indicating Menghini and at least one of the state defendants shared a common, unconstitutional goal. *See Anaya,* 195 F.3d at 596.

Based upon plaintiff's allegations, the court finds there is a genuine dispute of material fact regarding whether Menghini and Sawyer shared a common goal of depriving plaintiff of nearly three thousand dollars. While several courts have found that the simple resort to existing statutory procedures to replevin property or the voluntary submission to state regulations is insufficient to establish state action, plaintiff's claim encompasses more. *See, e.g., Sullivan,* 526 U.S. at 52, 119 S.Ct. 977 (stating regulation by state is not synonymous with state action); *Scott v. Hern,* 216 F.3d 897, 906 (10th Cir.2000) (discussing involuntary commitment procedures). And, unlike the situation where a property owner simply employs a "self-help" remedy without the assistance of a state actor, *see Flagg Brothers, Inc.,* 436 U.S. at 157, 98 S.Ct. 1729, plaintiff has alleged Menghini purposefully availed himself of the prison disciplinary proceedings and, with the prison's aid, attempted to collect the "judgment" from plaintiff.

This claim is analogous to the situation encountered by the Supreme Court in *Lugar v. Edmondson Oil Company,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In *Lugar,* the Court held that it had, in a long line of cases, consistently applied the constitutional requirements of due process to private parties who used state proce-

dures, with the overt aid of state officers, to secure property in dispute. *See id.* at 932–33, 102 S.Ct. 2744 (citing *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975)). In each of these cases, "state agents aided the creditor in securing the disputed property ..." and the Court adjudicated the debtor's due process claim even though no state official was a named party. *Lugar,* 457 U.S. at 933, 102 S.Ct. 2744. The application of due process standards to these creditors was proper because "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment." *Id.* & n. 16, 102 S.Ct. 2744 (stating it had found, in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), a private decision to invoke a presumptively valid state legal process to be state action); *see also Wyatt v. Cole,* 504 U.S. 158, 169, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (deciding private individuals who utilized a state replevin statute were not, if determined on remand to be state actors, entitled to qualified immunity).

Here, Menghini filled out simple paperwork, appeared before a prison disciplinary board, gave testimony, and received what is essentially a monetary judgment against plaintiff. This "judgment" was based upon the ruling of the hearing officer, Sawyer. Sawyer acted within the scope of her duty as an employee of the state of Kansas and with the authority of the laws and regulations applicable to this state's prisons. These allegations, if proven, would be a strong indicator that Menghini was a state actor. *See Soldal v. Cook County,* 506 U.S. 56, 61, 113 S.Ct.

538, 121 L.Ed.2d 450 (1992) (finding the trailer park owners had engaged in state action because they sought and received the assistance of the Cook County Sheriff's Department to remove plaintiffs' mobile home);[27] *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 622, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (relying upon *Lugar* and *Sniadach* ) ("It cannot be disputed that, without the overt, significant participation of the government, the peremptory challenge system, as well as the jury trial system of which it is a part, simply could not exist."). As in *Edmonson,* without the procedures of the prison disciplinary regulations and enforcement by the state officials, Menghini would not have been able to obtain the relief he sought.

Moreover, it appears the injury to plaintiff—a total freeze on his prison account—is "aggravated in a unique way by the incidents of governmental authority." *Edmonson,* 500 U.S. at 622, 111 S.Ct. 2077. Prison life generally requires inmates to forgo several of civilized society's most cherished rights, often even including personal dignity. It does not, however, require plaintiff to give up his basic and fundamental due process rights. In filing this disciplinary action within the prison disciplinary system, Menghini was able, with the assistance of plaintiff's correctional officers, to obtain a judgment for reimbursement from an employee who, at most, performed below expectations.

In the end, the court finds there is a genuine dispute of material fact as to whether Menghini was jointly engaged with Sawyer to deprive plaintiff of his money in violation of due process principles. Plaintiff has come forward with evidence from which a reasonable jury may find in his favor on this issue. As such, a trial on the merits is warranted.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. The state defendants' motion is granted as to the Eighth Amendment claim but denied as to the procedural due process claim. The Impact defendants' motion, arguing neither Schaefer nor Menghini acted "under color" of law, is granted as to Schaefer but denied as to Menghini.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 5 double-spaced pages and shall strictly comply with the standards enunciated by this court in *Comeau v. Rupp,* 810 F.Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 5 double-spaced pages. No reply shall be filed. Further, this case is referred to the magistrate judge for all appropriate pretrial matters.

IT IS SO ORDERED.

---

**27.** Justice White noted this action gave "new meaning to the term 'mobile home.'" *Soldal,* 506 U.S. at 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992).